First case. 1-4-21-59 United States of America v. Alvin Ray. Arguments not to proceed 15 minutes per side. Mr. Magidson for the appellant. Thank you. May it please the court. My name is Mark Magidson. I represent the defendant appellant Alvin Ray. We've raised six issues in this appeal due to time constraints. I'm not going to be able to address all six, but I don't want to give the impression that I'm abandoning those issues. We'll rely on our brief for those. And I would like to reserve three minutes rebuttal. The first issue I would like to address to this court is the denial of the motion in limine by the trial court of defendant's motion to preclude the term or the use of the word felon in the very charge that, or one of the charges that Mr. Ray was charged with in the indictment. He was charged with being a felon in possession of a firearm. And I want to talk to the court a little bit about biases, because that's the key to this motion, the key to this appeal. Mr. Magidson. Yes. Are you going to address the Miranda issue? Yes. Okay. Hopefully I will. I hope that you will too, because was your client a felon? Yes. And the court referred to him as a felon? Yes. You ever heard that all probative evidence is prejudicial to somebody? That's true. All right. Now, could you move on to the Miranda issue, please? I'll move on to that, but I'd like to come back to this other issue if the court pleases. The Miranda issue is simply this. There was a, at the time of the raid, Mr. Ray was asleep in his bedroom with his long-term girlfriend. He called her his wife. They'd been together for 19 years. They had a child together who was a teenager. The police rousted them up, and I should add parenthetically that his girlfriend, his fiancée, was employed with the Wayne County Circuit Court as a clerk, a very respectable job. Had she been arrested in this case, she would have been terminated. According to Mr. Ray, they were brought down, and one of the officers, Officer Hill, stated that somebody better take ownership of these guns or everybody's being arrested here. So he speaks up. He doesn't want his girlfriend. He's got a prior felony record. He doesn't want his girlfriend to become a part of the system. They have their child out there. He doesn't want to see the mother of his child being taken away in handcuffs. So he does what he believes to be the appropriate thing. He takes ownership. Now, there's no Miranda given at that point. About an hour and a half later, he is fully Mirandized. He then engages in this question and answer, and he repeats the same thing. He takes ownership of the gun. He admits to selling or distributing marijuana, and that is his confession. So I filed a motion. I claimed it was police coercion that contributed to this confession. In other words, if you are told that somebody's going to have to take ownership here or else, that begs a response. On the part of Mr. Ray, he felt compelled to reply. So he did, and as it turns out, of course, Ms. Lee, his girlfriend, was not arrested, not implicated, and she continued to maintain her job. But our point was that at least we should have an opportunity to have an evidentiary hearing and fully explore whether or not this was coercive conduct that amounted to rendering this confession involuntary. How did the alleged actions of the police at the residence make the later Mirandized statement inadmissible? Well, because that bell was still ringing when Mr. Ray was Mirandized, notwithstanding the fact that this wasn't his first rodeo, he'd been in police custody, charged and convicted prior. I recognize that. But the fact that he was so worried and concerned about his, when I say girlfriend, I mean it's 19 years. It's more than... Almost like a common law wife. Well, the average marriage is seven years, so they've been together for that length of time. So that was still resonating with him, and as a result, he felt compelled to take ownership of that. Would you agree that the later statement was properly, if you take away what happened at the residence, the later statement was properly given, he was sufficiently Mirandized at the police station? There was never a question that he was Mirandized. He did indicate that he was told things, that this was going to be off the record and things like that. I'm not even talking about that. And that later Mirandized statement did not purge the taint. That's your position? That's my position on that. I think it was an error for the court, moreover, he decided it on the briefs. The trial judge, with all due respect, in my view, should have at least given us an opportunity to fully develop these issues at an evidentiary hearing and not force us to proceed at a trial on that. But if I may return, Your Honor, to the issue that I was going to address regarding the bias of disclosing to the jury that my client was a felon. The whole idea of getting- We do have your argument in your brief. But having said that, if you steal your time. So we do enter into stipulations all the time, particularly on this type of case. But the type of biases that we're talking about are implicit and explicit biases. And implicit biases are something now that it's becoming more investigated to find out. These biases are unconscious, subconscious feelings that we have. And there's been a great amount of studies, particularly recently within the last eight to ten years, dealing primarily in race issues but in other aspects of society as well. And the Ohio State University's School of Social Science has compiled all the research and has recently issued a- That research was compiled by- who's the author of that study? I apologize, I- And what they found, Your Honor, is that they defined implicit bias as attitudes or stereotypes that affects our understanding, actions, and decisions that are unconscious. Mr. Magnuson, do you have cases that kind of will take you to where you need to be or is this sort of an oral Brandeis brief? Well, Your Honor, I mean that's a fair comment and you're right, but we have to start someplace. And what I'm trying to suggest to you that in this society, in our culture, when you're branded a felon, you're deemed to be a second-class citizen. It's like being an untouchable in the caste system in India. We allow, as a society, felons to be punished long after they serve their time. They're not allowed to vote, in many respects. They're not allowed to hold office, in many respects. They're not allowed to adopt children. How does this differ from Judge Clay's point, though? It's an element of the defense. You have a good and valid point and you're probably preaching to the converted. But this is not the case. That's the point. So you have a number of other equally, if not more compelling, substantive issues? If I may just briefly, Judge, all I'm suggesting is that in order to eliminate bias, I think that my solution or the solution that I proposed is to simply say, to say that Mr. Ray was conceitedly ineligible to possess a weapon. You don't introduce the term felon into the equation, and that way we can not have a tainted pool, if you will, of jurors. Because people have a visceral reaction when somebody is told, this individual is a felon. Do you think that the reaction of the jurors was equally visceral when they saw an African-American defendant? There's that, but there's nothing I can do about the color of his skin. What I can do is eliminate. The thing that I can do, and I can ask this court to do, is to eliminate one element of bias. That's all I'm asking. You're asking us to eliminate one element of the offense, going back to Judge Clay's point. That's why this is kind of an argument to nowhere. If we're talking about a fundamental fairness of due process, and that's what we're talking about, to get a fair and an impartial jury, and if they're going to be tainted by knowing that the man, we already provide that in a normal case. The jury never knows, unless the defendant chooses to testify, what his criminal history is. So now we're telegraphing it.  The final thing, or the other issue I'd like to address is that, and I think the trial court even commented on it, is the sufficiency of the evidence to find Mr. Ray guilty of possession of a firearm and furtherance of a drug trafficking crime. Under the case law, particularly Mackey, the government must clearly show that the firearms were possessed to promote or advance the commission of an underlying crime. But in the mere presence of the weapons is not sufficient. In this case, in particular, Mr. Ray's situation, this was not a drug house. This was a residence, unlike the case in Mackey or the other. Didn't the defendant admit that he sold marijuana to some of his buddies and dealt with them? Yeah, he did that. He shared marijuana, but this is not he didn't need guns. He didn't need guns and furtherance of that. Typically, what we're thinking about is... Evidence of the record, or is that just your opinion? Judge, when we have a situation where the man has his children, his common-law wife for 19 years, it's a fully furnished house. It's not barricaded. The shotgun was empty that was in the room. The other rifle in the other bedroom was not loaded. The handgun wasn't on the nightstand ready for protection. It was downstairs in some closet that was secreted away. Wasn't a coat in the closet also with the handgun? Yeah, well, these are coats. This was the summertime. It was 80 degrees. The doors were wide open. The police just walked in. They didn't have to break down the door. It was the summertime. It was hot outside. This is a fully furnished house. The quantity of money that they found throughout the house is $148. There's no scales or other paraphernalia. So for those reasons, I believe that the court committed error. Thank you very much. Thank you. We'll hear from the government. Good morning, and may it please the Court. My name is Shane Crawley, and I represent the United States. I'd like to touch on the felon issue just very briefly before we turn to the Miranda issue, which is clearly the issue that's concerning the Court the most. The D.C. Circuit, in a case, United States v. Clark, and I'll note this case is not in my brief, but I will be providing a 28-J letter in support, has considered a similar issue and rejected it. Now, this was a case in 1999, a case where the defendant both sought to bifurcate the trial, as the defendant did here, but also sought to be labeled a, quote-unquote, prohibited person rather than a felon for fear of bias. And in that court. . . Now, if the case was in 1999, it would not be eligible for a 28-J letter. You are correct, Your Honor. I can move on. But you can go ahead with your argument. In that case, the court rejected the suggestion that the defendant should be labeled or could be labeled a prohibited person rather than a felon because that would not materially reduce any implicit prejudice or bias that he may suffer by his status and may well invite more speculation because the jury would not know as to why he could not legally possess a gun, and that could lead to speculation on all sorts. In addition, it would deprive the government of the ability to convince the jury that a prosecution or a conviction was a moral prosecution, and for that reason it rejected a claim similar to the defendant's. That said, I'd like to turn to the Miranda issue, which is clearly the more pressing issue. I think there are two problems here. The first is, what is the appropriate standard? Because in our brief and below, it's argued as a coercion claim, but in the appellant's brief, they're presenting it as a Siebert analysis. And certainly the first issue is, what is the appropriate standard with which to analyze this case? The defendant in his brief below argued or claimed that the police threatened to arrest his girlfriend, his longtime girlfriend, common-law wife, and as a result of that threat, he later admitted at the police station that the shotgun was his. The district court analyzed this as a coercion issue, did not address it as a Siebert, midstream Miranda issue, and denied the claim. And it's not until now that he's raised Siebert, although he did not raise that in argument today, but I do think that's important to note, that the issue that was preserved was simply a coercion claim, not a Siebert, midstream Miranda analysis. That said, the testimony at trial, which is testimony this court can consider, to affirm the denial of a motion to suppress, shows that there was no threat. There was no threat to arrest his girlfriend. Officer Robson testified that there was no conversation whatsoever at the home about the guns or the drugs. The only conversation at the home related to general conversation, routine questions such as their name. I think the defendant mentioned how hot it was in the home and also that he was surprised. He thought the police were actually there to raid a neighbor's house. This is 678 and 687 of the record. There was no off-the-record conversation whatsoever regarding the gun at the home. Similarly, Sergeant Pachoski testified that he was present in the living room while the defendant was there with his girlfriend, and there were no threats whatsoever about the potential arrest of his girlfriend. Likewise, Sergeant Sloan testified that he was present and that there was no discussion whatsoever about the defendant or his girlfriend being under arrest. And finally, the girlfriend herself testified at trial, and she did not claim that the police threatened. If we were to disbelieve the police in this instance, would this become a Siebert issue? In other words, if we were to believe that the police told the defendant, Look, we're off the record. Did you sell weed here? Yeah, I sold weed. Is the shotgun yours? Yeah, the shotgun is mine. And if you don't tell us the truth about this, you know, we're going to arrest your wife and your son becomes a ward of the state. If we believe that those were factual statements, is this a Siebert issue? Well, Your Honor, I think the first question is where did this alleged conversation occur? You can get to that. Let's start with the answer to my question. Yes, Your Honor. Let's just assume that those facts are true, that this panel accepts those facts. Does this become a Siebert issue? If this court believes that there was an interrogation and that he gave statements in response to an interrogation and then a Miranda was given and then statements were given, then yes, that would be a Siebert analysis. But the record does not support that in any way. As I was saying, the girlfriend... We do have disputed factual contentions and the court never addressed the factual dispute. So why wouldn't we send the case back and ask the court to delve into resolving, at least to the satisfaction of the trial judge, these disputed factual issues as to whether who was threatened and all of that? Well, Your Honor, the only disputed facts come from the defendant's testimony at trial. The other facts are all in support and, in fact, actually contradict his claim that there was a threat whatsoever. But, I mean, there has to be some fact that has to determine whether they think he's more likely telling the truth or whether the witnesses to the other side of the issue are telling the truth. Yes, Your Honor. But if we go back to what was claimed during the motion to suppress, he claimed that he was coerced into giving a statement. He was coerced into giving a statement. In fact, the only thing that he claims was off the record was a conversation of who he could give up, essentially who he could point the finger to. And notably, he then signed a written Miranda notification of his rights where he denied that he was threatened in any way, shape, or form. He does not... were the same personnel who questioned him at the scene where he made these incriminating statements. And not much time had intervened between the time he was initially questioned and when he was given the Miranda rights. Doesn't that make a difference? Well, Your Honor, I think that goes back to when did this alleged conversation occur? Because if it occurred at the home, then an hour and a half had transpired between the purported first statement and the second statement. If it occurred at the state precinct, then obviously it would be much more akin to what you were describing. However, again, the defendant raised a coercion claim below, and the district court decided as a coercion claim. He did not object to the district court's decision here. He did not claim... I meant this as a Siebert claim. In fact, that was it. He did not renew it at trial after other evidence came in. We are prohibited from considering it, though, as a Siebert claim because he raised the factual issues below, didn't he? Your Honor, you certainly would review it de novo. I simply point that out... I point out the distinction here to show that this was not an issue where the evidence at trial should be used to reverse the denial. In fact, the evidence at trial should be used to, only in the light most favorable to the government, to affirm the denial. And here, again, the evidence at trial contradicts all of his claims. In fact, the defendant himself testified that the only conversation that occurred off the record was about who he could give up, who he could point the finger to. This is on page 984 of the transcript. All three of the officers, Officer Robson, who was present both at the home as well as during the interrogation, denied there was any threat or conversation about the gun or the drugs at the home or at the precinct before the Miranda rights were given. Sergeant Pszczalski also testified to that effect. Sergeant Sloan testified to that effect. And the defendant's girlfriend did not say that there was any sort of conversation at the home. The only person that the defendant points to is Officer Hill, who was subsequently killed in the line of duty. That's the only person he points to. But all three of the officers said that there was no conversation outside of their presence with the defendant. And even the defendant's own statements are contradictory from what he's claiming now because at trial he says that one of the officers, Officer Hill, said there are a lot of guns here and someone better own up to them. Again, not supported by the other evidence, but assuming that. And as a result, he claims that he took responsibility for the shotgun. In his brief, he turns that somehow into he took responsibility for the shotgun and the marijuana. There's no evidence of that. If we look at the transcript, this is 958 to 959, he testified there that he said the gun, the shotgun, was his. He's not talking about the crack cocaine. He's not talking about the revolver. He's not talking about the .22. He simply mentions the shotgun. But again, I would direct this court to the Miranda warning that he was given, a written notice of his Miranda rights, where the officers at the precinct went through step by step all of his rights, and at the end he said, I was not threatened or given any promises whatsoever before I give this statement voluntarily. And he signed that. Your Honor, respectfully, the jury heard the defendant's testimony and found him not credible in any way. They convicted him on all four counts. And this court should review this evidence  and affirm the denial of the motion to suppress because the evidence is simply not there to support his claim. Finally, turning to the sufficiency of the evidence with respect to the three firearms, respectfully, there was ample evidence for a rational jury to find that the defendant possessed a firearm in furtherance of a drug trafficking offense.  That shotgun was unloaded, is that right? That's correct, Your Honor. It was unloaded. But the shells were also in the bedroom. I believe the testimony was they were about three to five feet away and three of the officers testified that shotgun shells could be loaded within somewhere between two to ten seconds, depending on your expertise or familiarity with a shotgun. So yes, there was a shotgun found in his bedroom where the defendant and his girlfriend were found. And in that room, there were 31 bags of marijuana packaged for distribution. 31 bags, dime bags, I believe is what the officers described them as. So that's the first gun. The second gun, downstairs in the coat closet, there is a .380 semi-automatic revolver in a 5XL jacket. 5XL is significant because the defendant, at that time at least, was 5'9", approximately 230 pounds. A larger man, presumably that would fit him. And in a coat adjacent to the coat where the crack was found, or I'm sorry, to the way the gun was found, were 49 bags of crack cocaine, also packaged for distribution, also $10 dime bags, so to speak. So here you've got two instances where you've got guns and drugs found in proximity, and these are not drugs that were for personal use. Now I will note that there was marijuana also found in the kitchen, but the officer said that was loose marijuana more akin to personal use, and so that shouldn't be considered in this analysis. But with the shotgun and the semi-automatic revolver, these are right beside the drugs. And you've got upstairs a .22. Granted it was unloaded, but that's a gun also that was in reasonable proximity, about 10 feet away from the bedroom where he was staying, and that also could have been used to protect the house. The only gun that was near the crack was loaded, is that true? That's correct. It was loaded, I believe, with five rounds. And I would note, I think counsel did reference Judge Cone's, I think the best description would be his on-the-record musing as to whether or not these guns could be tied, could be found to be in furtherance. There are a couple of discrepancies, I think. Judge Cone was pondering, I think, on the record out loud, and at one point noted that the shotgun might not be used in furtherance, but then I think he was forgetting at that time that there were drugs actually found in the same room. He was talking about there being drugs downstairs, and so that I think was factoring in. And I would note that because when the motion was properly presented to the court, he denied the motion for acquittal based on these guns. So I think there's ample evidence that a rational jury could find that any of these guns were possessed in furtherance of drug trafficking offenses. So if there are no further questions, that will be all. All right. Thank you very much, Your Honor. Thank you very much. Thank you, Your Honor. Just briefly, I just want to respond at least to this Miranda issue. For clarification, this is what we're contending, is that at the time that Mr. Ray and Ms. Lee were rounded up, there wasn't a formal interrogation. It was somebody, an officer, stating somebody better own these weapons. That then implied or invoked a necessary response on behalf of Mr. Ray because he did not want, at that point, to his wife, his girlfriend, the mother of his child, hauled off in handcuffs before his child and the neighbors. So he took ownership at that point. And then it continued an hour and a half later. Now, counsel correctly shows that, well, that really didn't come out at trial. But it's two different things. What goes on at a trial and what goes on at an evidentiary hearing specifically to thrust out these issues, it's a difference. And I'm going to suggest that the court erred, at least at the very least, in not granting the defendant's motion for their request to conduct an evidentiary hearing so these very issues then could be addressed and then we wouldn't be necessarily arguing about what was said or what wasn't said. We'd have a transcript for that. Thank you very much for your time, unless there's further questions. Apparently not. Thank you, and the case is submitted. You may call the next case.